IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| American Bank Center, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| vs. | ) | |
| | ) | |
| Stephen Barker, | ) | Case No. 1-17-cv-195 |
| | ) | |
| Defendant. | ) | |

Before the court is American Bank Center ("ABC")'s Motion for Summary Judgment, wherein ABC seeks judgment against Defendant Stephen Barker for amounts allegedly owed to ABC. (Doc. No. 6). Barker opposes the current motion. (Doc. No. 9).

## I.   BACKGROUND

This action stems from a serious of transactions related to the purchase/development of a hotel in Dickinson, North Dakota, during the height of the Bakken oil boom. Generally speaking, ABC entered into loan agreements with (1) Grand Dakota Partners, LLC and (2) Grand Dakota Hospitality, LLC, d/b/a Ramada Grand Dakota Lodge & Conference Center (collectively "Grand Dakota"). In consideration for these loans, the Grand Dakota entities executed promissory notes in favor of ABC. In further consideration, Barker, in his individual capacity, executed corresponding guaranties in favor of ABC. These agreements are detailed below. The following facts are either uncontested or are construed in Barker's favor for purposes of the current motion.

### A.  Loan 60493401

ABC and the Grand Dakota entities first entered into a loan agreement under which ABC agreed to lend a maximum amount of $8,500,000 with a variable interest rate. (Doc. No. 1-1 pp. 16-19). Barker signed the loan agreement in his capacity as President of Grand Dakota Partners, LLC

and as the Managing Member of Grand Dakota Hospitality, LLC. Id. A notary public notarized the document as having been executed in Stark County, North Dakota on August 24, 2010. Barker also signed a promissory note on behalf of the Grand Dakota entities on August 24, 2010. (Doc. No. 1-1 pp. 13-15). He did so in the same capacities as the loan agreement. Id.

More central to this litigation, Barker, in his individual capacity, also executed a guaranty on August 24, 2010, the same date as the other loan agreements. (Doc. No. 1-1 pp. 7-8). This guaranty provided Barker guaranteed "to [ABC] the payment and performance of each and every debt, liability and obligation of every type and description which [Grand Dakota] may now or at any time hereafter owe to [ABC], whether such debt, liability or obligation now exists or is hereafter created or incurred . . . ." (Doc. No. 1-1 p. 7). Barker's guaranty was "absolute, unconditional, and continuing . . . ." Id. Barker's guaranty was also for an unlimited amount, and Barker agreed to "pay or reimburse [ABC] for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by [ABC] in connection with the protection, defense or enforcement of this guaranty in any litigation . . . ." Id. The document guarantees payment regardless of whether "any other person obligated to pay indebtedness, including [Grand Dakota], has such obligation discharged in bankruptcy or otherwise discharged by law." Id. Barker further waived any right to presentment, and ABC could collect on Barker's guaranty without seeking collection from alternate sources. Id. Finally, the guaranty provided it "shall be governed by the laws of the State in which it is executed." Id.

On July 17, 2013, ABC and the Grand Dakota entities executed a debt modification agreement. (Doc. No. 1-1 pp. 20-21). This agreement changed the interest rate to be charged under the original loan agreement from a variable to a fixed rate. Id. It did not change any other provision

of the loan agreement. Barker again signed the agreement in his capacity as President of Grand Dakota Partners, LLC and as the Managing Member of Grand Dakota Hospitality, LLC. Id.

### B. Loan 60493406

Thereafter, ABC and the Grand Dakota entities executed a second loan agreement in the amount of $2,500,000 on December 30, 2014. (Doc. No. 1-1 pp. 26-30). Barker signed this document as President of Grand Dakota Partners, LLC and as the Managing Member of Grand Dakota Hospitality, LLC. Also on December 30, 2014, the Grand Dakota entities, with Barker as their respective signatory, executed a promissory note regarding the second loan agreement.

Again germane to this litigation, Barker, in his individual capacity, also executed a guaranty on December 30, 2014. (Doc. No. 1-1 pp. 9-11). Under this guaranty, Barker guaranteed "the payment and performance of each and every Debt, of every type, purpose and description that [Grand Dakota] . . . may now or at any time in the future owe [ABC] . . . including without limitation all principal, accrued interest, attorneys' fees and collection costs . . . ." Id. The guaranty further provided Barker would "remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including [Grand Dakota], has such obligation discharged in bankruptcy . . . ." Id. The guaranty further required Barker to pay all expenses incurred in collecting under the guaranty, to the extent permitted by law. (Doc. No. 1-1 p. 10). As is relevant here, the guaranty dictated that North Dakota law applied. Id. This was a change in wording from the prior guaranty, which provided that the law that governed was the place of its execution.

### C. Grand Dakota's Financial Problems

Although the record is not clear as to the exact date, the Grand Dakota entities subsequently failed to make all payments required by the loan agreements and promissory notes. This failure

constituted a default under the agreements. (Doc. No. 8-1). Each loan agreement had an acceleration clause allowing ABC to declare the outstanding balance and accrued interest due immediately, which ABC elected to invoke. Id. After this election, the Grand Dakota entities filed for bankruptcy sometime in 2017, though the record does not reflect the exact date.

Barker has not paid ABC any amounts pursuant to either of the guaranties he executed. Id. ABC initiated this action to enforce both guaranties in state court, seeking judgment in the aggregate amount of $9,851,215.34. (Doc. No. 1-1 p. 5). This amount consisted of $9,366,108.49 in outstanding principal, $484,656.85 in interest accrued as of May 1, 2017, and $450.00 in late fees. ABC also seeks interest that has accrued from May 1, 2017, through the present. Barker answered the complaint in state court on September 14, 2017. (Doc. No. 7-1). Barker removed this action to federal court on September 20, 2017. (Doc. No. 1).

## II. DISCUSSION

ABC now seeks summary judgment as to its action on the two guaranties. ABC argues the guaranties are unambiguous and dictate Barker is liable for all amounts outstanding under the loan agreements. (Doc. No. 7). Barker opposes the motion, arguing this motion is premature and disputed issues of fact exist regarding the applicable law. (Doc. No. 9). The court and the parties are well-versed in the standard for summary judgment and the court need not repeat it here.

A. Barker's Rule 56(d) Objection

Barker argues summary judgment should not be granted because the case is still in its infancy and he has not conducted the discovery necessary to fully oppose the current motion. "Although discovery does not have to be completed before a district court can grant summary judgment, 'summary judgment is proper only after the nonmovant has had adequate time for discovery.'" Ray

v. Am. Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010) (quoting In re TMJ Litigation, 113 F.3d 1484, 1490 (8th Cir.1997)). Under Fed. R. Civ. P. 56(d), the court may defer considering a motion for summary judgment or allow time to take discovery if a nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to that motion. Under the discretion afforded by Rule 56(d), the court will not defer ruling on the current motion or grant other Rule 56(d) relief because Barker's objection fails on multiple levels.

Barker's lack of compliance with the plain language of Rule 56(d) is the foremost of such problems. Specifically, Rule 56(d) requires the nonmoving party show the necessity of Rule 56(d) relief by "by affidavit or declaration . . . ." Barker has filed an affidavit in opposition to the current motion, but that affidavit does not speak to any of the factors relevant for the court to fashion Rule 56(d) relief. (Doc. No. 10 pp. 1-2). Additionally, although Rule 56(d) requires the nonmoving party show the necessity of relief with "specified reasons," Barker has only vaguely alleged in his brief in opposition to ABC's motion that, "at this point in the discovery process, Barker cannot fully present evidence supporting his opposition . . . ." (Doc. No. 9 p. 6). Aside from identifying his N.D.C.C. § 22-01-15 claims as possible defenses needing further discovery, which the court will address below, Barker has not identified any other specific issue or defense needing more discovery, and Rule 56(d) makes clear that he cannot rely on a hope or prayer further discovery might provide something of use. Accordingly, to the extent Barker's briefing constitutes a general objection under Rule 56(d), that objection is denied.

To the extent Barker's Rule 56(d) objection can be winnowed down to his N.D.C.C. § 22-01-15 claims for possible exoneration, Barker again has not recited in his affidavit any relevant factors under Rule 56(d), and his Rule 56(d) objections still do not contain "specified reasons" why he

cannot fully assert these claims at present. Looking past these procedural failings, Barker's Rule 56(d) objection also fails for lack of good cause. Barker's claims for possible exoneration under N.D.C.C. § 22-01-15 are both predicated on ABC taking some action possibly affecting the original obligations Barker guaranteed. Barker's plea for further discovery on these issues ignores the fact Barker had intimate involvement with the relationship between the Grand Dakota entities and ABC, making Barker privy to any information possibly providing exoneration under N.D.C.C. § 22-01-15. Indeed, Barker executed every document appearing of record on behalf of the Grand Dakota entities, including loan agreements, promissory notes, mortgages, etc. (Doc. Nos. 1-1 pp. 7-30; 11-2). He also, not surprisingly as the principal of the Grand Dakota entities, exhibited personal familiarity with requests for a work out of the Grand Dakota entities's debt problems, including reference to specific dates, as set forth in his affidavit. (Doc. No. 10). Barker's claim that he lacks the necessary knowledge to identify with specificity what additional information he needs to obtain by discovery material to the pending motion, notwithstanding being the principal of the Grand Dakota entities, is simply specious.[1]

In summary, to the extent Barker raises a Rule 56(d) objection specifically as to his N.D.C.C. § 22-01-15 claims, that objection is denied on procedural grounds and for want of good cause.

B.  Applicable Law

Barker's principal opposition focuses upon what law governs the August 24, 2010 guaranty, which dictates it "shall be governed by the laws of the State in which it is executed." (Doc. No. 1-1

---

[1] What also speaks volumes about the fact that Barker's request for additional time has been interposed only for the purpose of delay is the lack of any request to supplement his response to ABC's motion during the more than five months that have elapsed since the filing of ABC's motion with additional information obtained during discovery, which the court surmises has never been conducted even though there has been no court-imposed stay of discovery.

p. 7). Where the execution occurred matters because of differing state laws. In North Carolina:

> After any note, bill, bond, or other obligation becomes due and payable, any surety, indorser, or guarantor thereof may give written notice to the holder or owner of the obligation requiring him to use all reasonable diligence to recover against the principal and to proceed to realize upon any securities which he holds for the obligation.

N.C.G.S. § 26-7(a). If a guarantor provides notice in accordance with N.C.G.S. § 26-8, North Carolina law discharges any obligation prejudiced by a creditor's lack of diligence. N.C.G.S. § 26-9(a)(1). North Dakota has no similar statutory provision. See N.D.C.C. ch. 22-01.

Barker's briefing on the issue, when taken with his pleadings and other documents in the record, leaves the court to guess as to the precise nature of his argument. Charitably reading everything in Barker's favor, he presents three separate arguments. First, Barker's answer (Doc. No. 7-1) and a pre-litigation letter (Doc. No. 10-1) indicate Barker originally alleged he was in North Carolina at the time he executed the August 24, 2010 guaranty, which would render North Carolina law applicable. Second, Barker's briefing can be read as arguing Barker executed a new guaranty with the debt modification agreement, that guaranty superseded the August 24, 2010 guaranty, and this new guaranty dictated North Carolina law applied. Third, Barker's briefing can be read as arguing Barker executed a new guaranty with the debt modification agreement in North Carolina, and, under the terms of the original guaranty, this rendered North Carolina law applicable. On one or all of these theories, Barker argues summary judgment is inappropriate because (1) North Carolina law governs the August 24, 2010 guaranty or (2) a disputed issue of fact exists as to whether North Carolina law or North Dakota law applies.

### 1. Original Guaranty

After reviewing the record, no genuine issue of facts exists as to where Barker executed the

August 24, 2010, guaranty. In a pre-litigation letter, Barker alleged he executed the guaranty in North Carolina. (Doc. No. 10-1). In his answer to ABC's complaint, Barker maintained he executed the given guaranty in North Carolina. (Doc. No. 7-1). In his opposition to the current motion, Barker submitted an affidavit noticeably devoid of any attestation he was in North Carolina when he executed the guaranty on August 24, 2010. (Doc. No. 10). In his brief in opposition to the current motion, Barker also noticeably makes no affirmative declaration he was in North Carolina when he executed the guaranty, opting instead to refer to the allegation set forth in his answer. (Doc. No. 9 p. 3). This change in tact and tenor was probably for good reason.

After filing his opposition brief to the current motion, Barker served opposing counsel with various interrogatory answers. Most pertinently, he provided the following answer:

> **INTERROGATORY NO. 6:** In Paragraph 6 on your Answer, you contend that you executed the First Guaranty, dated August 24, 2010, in North Carolina. Please provide that location in North Carolina.
>
> **ANSWER:** My prior belief was I signed the first guarantee in North Carolina. After addition review, it is possible I was in North Dakota when I signed this document. My travel records seem to support that I was in Dickinson, North Dakota from August 22, 2010 to August 28, 2010.

(Doc. No. 11-1 p. 3). Although this equivocal answer stops short of admitting Barker was in North Dakota when he executed the guaranty on August 24, 2010, the loan agreement Barker also executed on that date removes any doubt. On August 24, 2010, a public notary notarized the loan agreement and stated Barker personally appeared before that notary in Stark County, North Dakota. (Doc. No. 1-1 p. 19). A notary public also notarized a separate mortgage executed by Barker and stated Barker personally appeared before that notary in Stark County, North Dakota on August 24, 2010. (Doc. No. 11-2). Barker has not provided any explanation for how he could have executed the loan

agreement and mortgage in North Dakota on August 24, 2010, but also executed the guaranty in North Carolina on that same day. Barker's admissions "it is possible I was in North Dakota" and "[m]y travel records seem to support that I was in Dickinson, North Dakota from August 22, 2010 to August 28, 2010" belie any such explanation. Barker's perfunctory reference to the allegations set forth in his answer cannot raise a genuine issue of disputed fact as to this point. Fed. R. Civ. P. 56(c)(1). On the record before the court, Barker executed the implicated guaranty in North Dakota on August 24, 2010, and no genuine issue of fact exists as to that issue. Pursuant to the guaranty's plain and unambiguous terms, North Dakota law governs its interpretation and application.

### 2. "New" Guaranty

Possibly recognizing this inevitable conclusion in light of his interrogatory answers, Barker's briefing can be read as presenting alternative theories for applying North Caroline law. At various times, Barker suggests he executed a new guaranty with the debt modification agreement. (Doc. No. 9 p. 3) (noting "ABC required Barker to sign a new personal guaranty related to that loan modification."). According to Barker, the "guaranty related to the loan modification provides that the guaranty laws of North Carolina, not North Dakota apply." (Doc. No. 9 p. 3). Barker further represents he executed this new guaranty in North Carolina. (Doc. No. 9 p. 7); (Doc. No. 10 p. 1). Barker avers the "loan modification and guaranty supersedes the initial loan agreement and its guaranty." (Doc. No. 9 p. 3). On this sequence of events, Barker's briefing can be read as arguing a question exists as to "whether a reasonably jury could find that North Carolina, not North Dakota, law applies to this Guaranty" (Doc. No. 9 p. 7) because (1) the new guaranty modified the original guaranty and the place of modification controls the choice of law provision in the original guaranty or (2) the new guaranty, and its North Carolina choice of law, supplanted the original guaranty.

Regardless of how construed, the arguments fail for the same reasons. Barker has not submitted any document purporting to be a new guaranty related to the debt modification agreement despite now having had months to do so since the filing of ABC's motion. To defeat the current motion, Barker must do more than make vague allegations as to the purported contents and legal effect of this new guaranty, with the obvious first step being to provide the court with that document when he clearly is in a position to do so or, at the very least, explain for whatever reason (unfathomable here given the circumstances) as to why he could not. The court cannot simply rely on Barker's assurances, and Barker's failure to provide the court with this purported guaranty leaves only the reasonable conclusion that such document does not exist. Because he has failed to provide any documentation, Barker has not carried his burden of raising any genuine issue of fact with respect to the application of North Carolina law to the August 24, 2010 guaranty. RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F .3d 399, 402 (8th Cir. 1995) (noting "parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment.").

### 3. December 30, 2014 Guaranty

Even if the court agreed with Barker that North Carolina law governed the August 24, 2010 guaranty, or a genuine issue of material fact existed as to what law is applicable, Barker's liability would remain the same. Barker's argument regarding the possible application of North Carolina law is limited to his liability arising under the August 24, 2010 guaranty. The issue has absolutely no bearing on Barker's liability under the December 30, 2014 guaranty that explicitly states North Dakota law applies. Obviously, this includes Barker's liability for the amounts borrowed by the Grand Dakota entities under the second loan agreement. It also includes for reasons discussed next Barker's liability for the amounts borrowed under the first loan agreement.

Although Barker makes much ado about whether North Carolina law might be his saving grace, the December 30, 2014 guaranty provides "Barker guaranteed "the payment and performance of each and every Debt, of every type, purpose and description <u>that [Grand Dakota] . . . may now or at any time in the future owe [ABC]</u> . . . including without limitation all principal, accrued interest, attorneys' fees and collection costs . . . ." (Doc. No. 1-1 pp. 9-11) (emphasis added). This language is broad enough to guarantee all debts owed by the Grand Dakota entities to ABC, regardless of whether those debts came about before, contemporaneously with, or subsequent to the December 30, 2014 guaranty's execution. At the time Barker executed the December 30, 2014 guaranty, the Grand Dakota entities were indebted to ABC under the first series of loan documents, as modified by the debt modification agreement. The Grand Dakota entities became further indebted to ABC under the second series of loan documents. Under the broad and unambiguous language of the December 30, 2014 guaranty, Barker guaranteed payment of all amounts owed by the Grand Dakota entities, regardless of when incurred. <u>See</u>, e.g., <u>First Nat. Bank & Trust Co. of Bismarck v. Hart</u>, 267 N.W.2d 561, 563-64 (N.D. 1978) ("<u>Hart</u>"); <u>State Bank of Burleigh County v. Porter</u>, 167 N.W.2d 527, 531 (N.D. 1969) ("<u>Porter</u>"). Accordingly, even assuming North Carolina law governed the August 24, 2010 guaranty (and the court has concluded it does not), Barker nonetheless remained liable for all of the Grand Dakota entities' indebtedness under the December 30, 2014 guaranty, rendering Barker's pained attempts to have North Carolina law govern the August 24, 2010 guaranty for naught.

### C. Barker's Liability Under the Guaranties

ABC argues Barker is liable for all amounts currently owed by the Grand Dakota entities, plus additional collection costs, under the unambiguous language of each guaranty. In North Dakota,

a "'guaranty' means a promise to answer for the debt, default, or miscarriage of another person."

N.D.C.C. § 22-01-01(2). Under North Dakota law:

> An absolute guaranty is defined as a contract by which the guarantor has promised that if the debtor does not perform his obligation or obligations, the guarantor will perform some act (such as the payment of money) to or for the benefit of the creditor. Thus, a guaranty is classified as absolute even though the liability of the guarantor is conditioned upon the default of the principal debtor. When the guaranty is absolute, and provides for the payment of a specified sum of money at a specified date, liability becomes fixed on default of the debtor.

Porter, 167 N.W.2d at 532. In North Dakota, a "guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal and without a demand or notice." N.D.C.C. § 22-01-10. A contract of guaranty is a contract distinct from the underlying obligation for which the guarantor agrees to answer. Bank of Kirkwood Plaza v. Mueller, 294 N.W.2d 640, 643 (N.D. 1980). Guaranties are to be construed the same as other contracts. First Int'l Bank & Trust v. Peterson, 2009 ND 207, ¶ 6, 776 N.W.2d 543

The terms of the August 24, 2010 guaranty executed by Barker are clear and unambiguous. (Doc. No. 1-1 pp. 7-8). As detailed above, Barker guaranteed to ABC "the payment and performance of each and every debt, liability and obligation of every type and description which [Grand Dakota] may now or at any time hereafter owe to [ABC], whether such debt, liability or obligation now exists or is hereafter created or incurred . . . ." (Doc. No. 1-1 p. 7). Barker's guaranty was "absolute, unconditional, and continuing . . . ." Id. Barker's guaranty was for an unlimited amount, and Barker further agreed to "pay or reimburse [ABC] for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by [ABC] in connection with the protection, defense or enforcement of this guaranty in any litigation . . . ." Id. This guaranty makes clear Barker absolutely and unconditionally agreed to answer for all debts owed by the Grand Dakota

entities upon their default, including all reasonable expenses incurred in any collection action. The terms of the December 30, 2014 guaranty executed by Barker are equally as broad as the August 24, 2010 guaranty and, likewise, are clear and unambiguous. (Doc. No. 1-1 pp. 9-11).

Barker became liable under the unambiguous language of the two guaranties for the amounts due under the Loans 60493401 and 60493406 at the time Grand Dakota entities defaulted on their obligations under the Loans, plus additional amounts for continuing interest and reasonable costs and attorneys fees. An uncontested affidavit submitted by ABC indicates the following:

(1) The following amounts remain outstanding under Loan 60493401: (1) principal in the amount of $7,011,576.72; (2) interest in the amount of $549,240.18 as of October 30, 2017; and (3) late fees in the amount of $225.00. The aggregate of these balances comes to $7,561,041.90.

(2) The following amounts remain outstanding under Loan 60493406: (1) principal in the amount of $2,354,531.77; (2) interest in the amount of $166,326.48 as of October 30, 2017; and (3) late fees in the amount of $225.00. The aggregate of these balances comes to $2,521,083.25.

(Doc. No. 8-1). Based upon the clear terms of two guaranties, Barker is liable to ABC in the foregoing aggregate amounts measured to October 30, 2017, as well as for continuing interest and reasonable attorneys' fees and costs.

D.  Exoneration Under N.D.C.C. § 22-01-15

Barker's last stand against entry of summary judgment focuses upon N.D.C.C. § 22-01-15 possibly providing exoneration. That statute provides:

> A guarantor is exonerated, except insofar as the guarantor may be indemnified by the

> principal, if, by any act of the creditor without the consent of the guarantor:
>> 1. The original obligation of the principal is altered in any respect; or
>> 2. The remedies or rights of the creditor against the principal in respect thereto are impaired or suspended in any manner.

N.D.C.C. § 22-01-15. The North Dakota Supreme Court has described statutory exoneration as a defense to liability. Brioschi-Minuti Co. v. Elson-Williams Const. Co., 172 N.W. 239 (N.D. 1919). Under Rule 56, a nonmoving party may resist a properly supported motion for summary judgment by invoking an affirmative defense, but that party has "an affirmative burden to identify specific facts in the record showing its defenses raised a triable issue against its liability." Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 714 (8th Cir. 2004). Because Barker raises claims under each of the subsections found in N.D.C.C. § 22-01-15, the court will address each in turn.

### 1. Alteration of the Original Obligation

Barker first argues N.D.C.C. § 22-01-15(1) may have exonerated his obligations under the guaranties because the original obligations he guaranteed may have been altered. The North Dakota Supreme Court has had multiple occasions to apply N.D.C.C. § 22-01-15(1) and has said:

> Alteration of a contract "is a process wherein the parties make '[a] change in the provisions of a contract.' Black's Law Dictionary 71 (5th ed.1979)." Biteler's Tower Serv., Inc. v. Guderian, 466 N.W.2d 141, 143 (N.D.1991). As this Court has observed, the materiality of an alteration of a principal's obligation is irrelevant; under N.D.C.C. § 22–01–15, a guarantor is exonerated if the creditor alters the principal's original obligation "in any respect" without the guarantor's consent. Tri–Continental Leasing Corp. v. Gunter, 472 N.W.2d at 439. To be exonerated, a guarantor need not be injured by an alteration in the principal's obligation. AMF, Inc. v. Fredericks, 212 N.W.2d 834, 836 (N.D.1973).

Ag Serv. of Am., Inc. v. Midwest Inv. Ltd. P'ship, 1998 ND 189, ¶ 10, 585 N.W.2d 571. Whether an alteration has occurred within the meaning of N.D.C.C. § 22-01-15(1) is a question of fact. Sterling Dev. Group Three, LLC v. Carlson, 2015 ND 39, ¶ 7, 859 N.W.2d 414.

While Barker correctly notes whether an alteration occurred is a question of fact, that is only the case where a genuine dispute exists as to that issue. As the party asserting the defense, Barker bears the burden of presenting the court with admissible evidence showing a factual dispute as to a possible alteration. Under North Dakota law, a "contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise." N.D.C.C. § 9-09-06. Aside from speculating an alteration of the original obligations may have occurred, Barker has not identified any possible alteration satisfying the statute of frauds, much less provided the admissible evidence necessary to create a genuine issue of fact as to that issue under Fed. R. Civ. P. 56.[2] Accordingly, Barker has failed to establish the existence of a genuine issue of disputed fact as to his N.D.C.C. § 22-01-15(1) defense.

### 2. Impairment or Suspension of Remedies

Barker also argues N.D.C.C. § 22-01-15(2) may have exonerated his obligations under the guaranties because ABC may have acted in a manner that impaired or suspended its rights against the Grand Dakota entities. In support of this argument, Barker cites ABC's conduct in negotiating

---

[2] Barker has not argued the debt modification agreement (Doc. No. 1-1 pp. 20-21) executed by the Grand Dakota entities and ABC altered the original obligations Barker guaranteed on August 24, 2010. Even if he had, he has failed to come forward with material facts demonstrating that it was without his consent when the evidence before the court is sufficient to imply it. The North Dakota Supreme Court has suggested that "consent," as used in N.D.C.C. § 22-01-15, may be either express or implied. See Sterling, at ¶ 14 (not rejecting the contention a guarantor could impliedly consent to an alteration so as to preclude exoneration under N.D.C.C. § 22-01-15); cf. Porter, 167 N.W.2d at 536 (stating it "is also a well established rule that consent need not be explicit, but may be implied from the nature of the guaranty and the transactions in connection with the guaranty."); Matter of Estate of Murphy, 554 N.W.2d 432, 436 (N.D. 1996) (noting consent "is implied when the benefitted party knows of the other party's actions and fails to object to those actions."). In this case, Barker executed the debt modification agreement in his capacity as a corporate officer of the Grand Dakota entities. Absent something to indicate the contrary, this is sufficient to imply his consent to the modification in his individual capacity as the guarantor of the debt of that closely held entity. See Porter, 167 N.W.2d at 537 (rejecting an exoneration claim where "the guarantors, as officers of the principal debtor, had knowledge of the course of business between the principal and creditor and had knowledge of the notes that were given by the principal, and the various renewal notes that were executed.").

However, even if the debt modification agreement exonerated Barker's obligations under the August 24, 2010 guaranty, Barker remained liable for all amounts owed by the Grand Dakota entities under the December 30, 2014 guaranty as explained earlier.

a possible workout agreement between itself and the Grand Dakota entities. According to Barker, ABC was dilatory in responding to the Grand Dakota entities' requests to restructure their debts and no such workout agreement came to fruition. Without this workout agreement, Barker alleges the Grand Dakota entities ultimately filed for bankruptcy, thereby possibly impairing ABC's remedies. On this basis, Barker argues N.D.C.C. § 22-01-15(2) may have exonerated his obligations under the guaranties based upon ABC's conduct, making summary judgment inappropriate.

The problem with this argument is that ABC was under no obligation, either as a matter of law or contract, to engage in a "work out." Hence, the alleged failing to timely address the Grand Dakota entities' purported request for a "work out" is not a causative act that can provide the basis for a defense of exoneration. In fact, there is nothing to suggest that the Grand Dakota entities' voluntary filing for bankruptcy (which appears to have been instigated by Barker as its principal and, in any event, not by ABC) was the result of anything other than their inability to pay their debts and that it occurred after they had already defaulted under their obligations to ABC.

But, even if there might be situations where negotiations or other dealings might give rise to a defense of exoneration, this clearly is not one of them, given the failure on the part of Barker to allege any specific facts - much less provide support for them in opposition to the motion for summary judgment - that ABC's acts somehow impaired its rights vis-a-vis the Grand Dakota entities as opposed to ABC's rights becoming impaired by their not paying their debts and ultimately filing for bankruptcy. Or, to put it another way, if Barker wanted time for the Grand Dakota entities to negotiate a restructuring of its debts, he could have advanced money to keep the loans current, which, as the North Dakota Supreme Court made clear in Porter, is what ABC had bargained for. Porter, 167 N.W.2d at 537 ("If the guarantors felt at any time that their position or rights were

becoming impaired by an action of the principal, all they had to was pay the past due debt which is no more than they had agreed to do, and immediately resort to the principal for reimbursement.").

Not surprisingly, Barker has not cited, nor has the court found, any authority that supports his argument - particularly when the guaranty, such as the ones in this case, is a guaranty of payment and not a guaranty of collection. See, e.g., Porter, 167 N.W.2d ay 531-37. In short, Barker's vague arguments with respect to possible exoneration are without merit.

### III. CONCLUSION

In summation of the foregoing: (1) the court overrules Barker's Rule 56(d) objection; (2) North Dakota law applies to the August 24, 2010 guaranty; (3) Barker is liable to ABC under at least one, if not both, of the August 24, 2010 and December 30, 2014 guaranties as of October 30, 2017 in the amount of $7,561,041.90 with respect to Loan 60493401 and $2,521,083.25 with respect to Loan No. 60493406; and (5) Barker's exoneration defenses fails as a matter of law based on the material uncontested facts. Accordingly, the court **GRANTS** ABC's Motion for Summary Judgment. (Doc. No. 6). For purposes of entering final judgment, ABC is directed to submit supplemental and updated affidavits detailing the amounts currently owed under the guaranties and an itemized statement of costs and expenses incurred in prosecuting this action within 14 days. Barker shall have 14 days to respond. If ABC elects not to request any additional amounts or fails to do so within 14 days, judgment will be entered for the amounts set forth above.

**IT IS SO ORDERED.**

Dated this 6th day of April, 2018.

                                            */s/ Charles S. Miller, Jr.*
                                            Charles S. Miller, Jr., Magistrate Judge
                                            United States District Court